## James B. Hasson and W. S. Cook, Guardian of Frank N. Cook and Lily Dale Cook, *v.* Benjamin Klee, Appellant.

*Ejectment—Evidence—Adverse possession—Charge of court.*

In an action of ejectment where defendant claims title by adverse possession for twenty-one years by himself and his predecessors in title, and plaintiffs claim that during a portion of the twenty-one years defendant's predecessors in title held the land under a permission, license or lease from plaintiffs' predecessors in the title, and there is no evidence to show the existence of such a permission, license or lease, and no reference in the case to it, except in an offer of testimony which is rejected as incompetent, it is error for the court to refer to the alleged lease, or to base any instructions upon the assumption of its possible existence.

Argued Nov. 6, 1894. Appeal, No. 254, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1893, No. 623, on verdict for plaintiffs. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment to recover two lots on Buena Vista street in Allegheny city. Before WHITE, J.

The facts appear by the charge of the court, and the opinion of the Supreme Court.

The charge of the court was as follows:

" This action is to recover two lots on Buena Vista street in Allegheny city, each lot 20 feet fronting on the street and extending back 110 feet.

" The plaintiff claims title under his brother, J. R. Hasson, and from the heirs of W. Duff, Jr. William Robinson, I believe, laid out the lots on that street, at least they are described as lots Nos. 200 and 201 in his plan, and he made a deed for these two lots to J. R. Hasson and W. Duff, Jr., on the 10th day of May, 1856. J. R. Hasson conveyed his interest in those lots to James B. Hasson, who, I believe, is his brother, on the 14th day of December, 1892, and afterwards James B. Hasson got a deed from the heirs of W. Duff, Jr., dated the 7th day of January, 1893. By virtue of these conveyances the plaintiff has a regular title to those lots, and, if there was nothing else, he would be entitled to recover.

" The defendant, however, sets up the statute of limitations. On the 28th day of February, 1889, he got a deed from his uncle, Joseph Klee.   To go back, however, to the beginning of what might be called the record title of the defendant, he claims under a deed executed by the sheriff of this county, acknowledged on the 25th day of January, 1866, purporting to convey the right, title and interest of Edward McQuaide in these two lots.   That deed was to Greenwald and Kahn. Greenwald sold to Kahn his interest, which would be one half, by a deed of the 23d of November, 1874, and Kahn made a conveyance then to Kaufman on the 8th day of February, 1875; then Kaufman conveyed to Joseph Klee, by a deed of Oct. 25, 1877.

" There is no evidence before us that Edward McQuaide ever had any title to these two lots; there is no deed on record to him, conveying any title whatever.   The sheriff sold whatever title or interest he may have had in these two lots. If he had no title, that sheriff's deed conveyed no title.   It is frequently the case that a party having a judgment, and supposing that the defendant in his judgment has an interest in some property, may have it levied upon and sold.   It does not convey a title unless the party as whose property it was sold had the title; and, as there is no deed on record showing that Edward McQuaide ever had any title to these lots, and no evidence before us here that he ever had any title, that sheriff's deed gave no title to these lots to Greenwald and Kahn.

"It may be considered, however, in this case simply as evidence that they went into possession under color of title ; that is, claiming that they had some title to the lots; and if they went into possession in pursuance of that sheriff's deed, it would be the beginning of their possession, and then, if they retained possession of it, claiming title and using it as their own, for twenty-one years, the statute of limitations would give them a title.

" The possession of property which will enable a party to perfect a title and claim the benefit of the statute of limitations must be a peaceable possession; not a possession where there is a fight about it or controversy or trouble arising about it,— a peaceable possession for twenty-one years.   It must also be what is called a hostile possession ; that is, claiming it as the

property of the party in possession, and denying the title of any other person; it must be of that character. It must also be a visible possession; one that can be seen and known by any person who may have a claim to the title. It must be exclusive; not a part of the time having it in possession and a part of the time somebody else using it. It must be continuous for twenty-one years, and, as another adjective is used, notorious; that is, the possession should be such that persons claiming any interest in the property, or anybody else, may see that these parties are in possession, and in possession in such a way that this possession may show that these parties claim it and own it; so that persons may see and know their possession. Now these are the essential elements to make a possession for twenty-one years, sufficient to give a person a title.

" The object of that statute is to quiet titles to property; and if a man actually has the title to property and pays no attention to it, is indifferent about it, lets somebody else go in possession and keep possession in that way for twenty-one years, why the law says that he ought to lose his title, and that the party in possession for that length of time, using in that way, ought to be considered the real owner of that property. Of course before such a statute was passed a man's title was not cut up if he had been out of possession fifty years, but that often led to trouble; deeds might be lost, and in various other ways a party in possession might not be able to prove his title; and for that reason, I say, the statute was passed, saying twenty-one years peaceable possession of property, claiming it as a man's own, denying the title of any person else, in possession of it so that everybody could see it, exclusively, nobody else having anything to do with it, would make a good title, and that is really the claim here of the defendant.

" Now ordinarily in actions of ejectment the plaintiff must recover on the strength of his own title. It is not necessary, generally, in an action of ejectment, for the defendant to put in evidence his title, unless the plaintiff can make out a good title; in that sense the plaintiff must recover on the strength of his own title. But where the plaintiff has a record title, a deed or series of deeds on record, that clearly gave him the title to the property, and the defendant sets up, in opposition to that, the claim of the statute of limitations, then the burden of proof is

on the defendant to prove that he has had possession of it in such a way and such a length of time as would give him a title.

"In this case, therefore, the burden of proof is on the defendant to show that he, or those under whom he claims, have been in possession of this property for twenty-one years.

"Now I believe there is no evidence here to show how long McQuaide was in possession of that property. There is some evidence that he was; yet the evidence on the part of the plaintiff is that he occupied these two lots from 1856, when J. R. Hasson got title from Robinson, until, perhaps, 1861 or 1862. Yet there is some evidence here that McQuaide used these two lots as a part of his cattle yard there; and there is some evidence that he had left there, or ceased to use them as a cattle yard, before this sheriff's sale, in January of 1866. I do not think that is very material in this case, because the mere possession of McQuaide, if he had possession, has not been established here as a possession claiming title. He may have been a tenant or he may have been there by sufferance; there is no evidence that his possession was exclusive, and hostile to the plaintiff.

"Now the first question would be as to the possession of the defendant or those under whom he claims,—and he may go back and claim the benefit of the statute through all of those preceding owners of the property, if their possession was continuous. Going back, then, to Greenwald and Kahn, who got the sheriff's deed in 1866, if Greenwald and Kahn, or those to whom they conveyed, had possession, claiming it and using it as I have indicated the kind of possession should be, for twenty-one years after that, that would give a good title to the defendant. Say that possession commenced at the date of the sheriff's deed,—and, ordinarily, possession is not given at a sheriff's sale on the date of the deed; ordinarily it is after that some time,—but taking it as the date of that deed, if Greenwald and Kahn entered into possession in pursuance of that deed on the 25th day of January, 1866, claiming it as theirs, using it as theirs and continuing in possession (such a possession as I have indicated) for twenty-one years, they would have a good title. The twenty-one years would expire on the 25th of January, 1887.

" If they had twenty-one years' possession the fact that they may not have been in possession afterwards will not cut up the title they obtained by the statute of limitations; but they must have been twenty-one years consecutively, all the time, in possession.

" Now the evidence is that Greenwald and Kahn quit business about 1885, because the evidence is that the stockyards were abandoned in 1885.    That would not be twenty-one years; it would only be nineteen years, and if the time falls short even one month of twenty-one years it is fatal to the title.

" Apart from that, gentlemen, there is, under the evidence, a question for you, whether Greenwald and Kahn did take possession of the property at that time, by virtue of the sheriff's deed. The witness Kraft testified that they were in possession in 1865. He says that Mr. Kahn told him that they were there in pursuance of a lease in 1865.    Now, if they were there in pursuance of a lease from Mr. Hasson, the owner of the property, they could not claim title under the sheriff's sale of the lots as the property of McQuaide, without giving up the possession to Hasson, or, at least, notifying him of that sheriff's sale, and that they claimed title under that sheriff's sale.

" Then there is other evidence for you to consider, whether Mr. Hasson did use this property after 1865.    He testifies that he did, for some purposes, use it even in 1869.

" These are matters for you, gentlemen, because you will have to fix the date when Greenwald and Kahn took possession of it, claiming it as their property.    If they did not take possession and have exclusive possession of it, hostile possession, until 1869, why the twenty-one years would not expire until 1890.

" After that yard was abandoned as a cattle yard, it is a question for you, gentlemen, whether after that date, after 1885, the defendant, or those under whom he claims, had possession of it in the sense I have indicated,—the kind of possession that the law requires.

" One witness testifies that, I think in 1893, he got a lease of it from the plaintiff here, and that he had it, I think he said seven,—six, seven or eight—years before that, and it was lying out, a kind of common; and he said he didn't know who claimed it or who owned it, and he occupied it for a considerable time without knowing who claimed it or who owned it. '

" About 1891, I believe it is, the controversy arose between these parties.

" If the parties under whom the defendant claims (and that would be Greenwald and Kahn) abandoned the property before the twenty-one years had run, neglected it and paid no attention to it, did nothing in the way of tending to it or exercising any care over it, so that anybody could see that there was a claiming owner to that property, why that would not finish or complete their twenty-one years.

" Under the evidence Greenwald and Kahn paid the taxes on this property all along, perhaps before 1866, the time of this sheriff's sale.

" Now, as the sheriff's sale was of the title of McQuaide, the plaintiff would not be presumed to know anything about it. It could have taken place without the plaintiff's knowledge at all, and unless he knew something about it he would not be prejudiced, could not be prejudiced because there was a sheriff's sale selling it as the property of McQuaide.

" So a party may pay the taxes on the property, and the mere fact of paying the taxes will not give a party the title to the land. It is very frequently the fact that where there is a long lease the property may be assessed in the name of the tenant, or even if assessed in the name of the landlord the tenant may pay the taxes ; but generally, I believe, where there is a long lease, the property is taxed in the name of the tenant for the mere convenience in payment, perhaps. The mere fact that a party has paid taxes for twenty or thirty years will not give title to the property ; it may be evidence, in connection with other evidence, as to the kind of possession that the party has, and it may be evidence, also, in connection with other testimony, that he claimed title to it, and, in that sense, it is to be considered."

Plaintiffs' point, among others, was as follows :

" 4. If the jury believe that Greenwald and Kahn used said lots by the permission, license or lease of the rightful owners, Hasson and Duff, from 1866 to Nov. 23, 1874, or to any later date, then their possession to that time would not be adverse or hostile, and the plaintiffs are entitled to recover. *Answer:* Affirmed."

*Errors assigned* were (1) answer to point as above, quoting point, and (2) the whole charge.

*J. Scott Ferguson, J. A. Langfitt, Wm. Kaufman* and *H. W. McIntosh* with him, for appellant.

*W. S. Nesbit, D. C. Nevin* with him, for appellees.

OPINION BY MR. JUSTICE MCCOLLUM, May 30, 1895:

There was evidence in the case from which the jury might have found that Greenwald and Kahn were the immediate successors of McQuaide in the occupancy of the lots in question and that he was in possession of them as early as 1860. At a sheriff's sale in 1866 they acquired his title to or interest in them, and thereafter for a period of nineteen years they used them for "droveyard purposes" and paid all the taxes on them, including the assessments for municipal improvements. It is a circumstance worthy of note that while McQuaide, Greenwald and Kahn were living Hasson and Duff who owned the lots in 1856 offered no resistance to their possession or the possession of their successors in title. In December, 1892, Hasson conveyed his interest in them to his brother, the present plaintiff, who having obtained a deed from the heirs of Duff in January, 1893, leased them in April of that year to Winters. This was the first assertion by lease of the Hasson and Duff title, and it was obviously made to enable the plaintiffs to secure possession and compel the defendant to abandon his claim, or bring suit to enforce it. The evidence submitted on the trial afforded but slight ground, if any, for an inference that Greenwald and Kahn were at any time the tenants of Hasson and Duff, or that they paid the taxes for the use of the lots. The declaration testified to by Kraft as having been made to him by Hasson in 1865 was not sufficient to warrant it. That declaration, if made, was quite as consistent with a possession under McQuaide whose title Greenwald and Kahn acquired the next year as a possession under Hasson and Duff. Besides, an inference that the taxes were paid for the use of the lots was opposed to the admissions made on the trial, and to the testimony of J. R. Hasson the plaintiffs' grantor. He testified distinctly that he paid all the taxes, directly, or advanced money

to another person to pay them. He so testified after the plaintiffs' offer to prove by him a different state of facts was rejected. Furnishing money to a person to pay taxes is not a leasing of lots in consideration of the lessee's agreement to pay the taxes upon them and keep them fenced. But the rejected offer furnished no basis for the verdict of the jury, or for instructions to them. It could rightly have no place in either.

There was no evidence showing that McQuaide bought or leased the lots of Hasson and Duff, but there was evidence of his possession of them anterior to that of Greenwald and Kahn, and of their purchase of the lots at a judicial sale of them as his. The sale indicated that it was supposed by the creditors of McQuaide that he owned or had an interest in the lots and that such was the belief of Greenwald and Kahn is evidenced by their purchase of them. Their possession and payment of taxes and assessments for street improvements were therefore naturally referable to a claim by them of ownership of the lots on which the assessments were laid. But as it was not shown that McQuaide had title to the lots the purchasers took nothing by the sale, and the evidence of it was valuable only as throwing light upon the nature and character of their claim and possession. The conditions under which the case was tried were not favorable to the ascertainment of the facts essential to a correct decision of it. The parties whose possession constituted the principal reliance of the defendant were dead and their death rendered the plaintiffs' grantor incompetent to explain that possession. The litigants were therefore compelled to rely for their evidence, respecting the possession of the lots, upon the recollection of persons residing in the neighborhood of them. The evidence so obtained covered a period of thirty years and was somewhat conflicting. It was sufficient, however, to warrant the jury in finding a possession which clothed the defendant with title under the statute of limitations, and so the learned court below regarded it. Was it submitted to them with proper instructions? Whilst the attention of the jury was called to every possible phase of the plaintiffs' contention it seems to us that the defendant's case was not adequately presented to them. From what was said in the charge respecting the declaration testified to by Kraft as having been made to him by Kahn in 1865, the jury may have inferred that the

declaration considered by itself was sufficient to justify them in finding that Greenwald and Kahn were then in possession of the lots under a lease from Hasson. For reasons already stated we think it could not be so regarded. We think, too, that the unqualified affirmance of the plaintiffs' fourth point was misleading. By it the jury were told that if they believed Greenwald and Kahn were in possession of the lots by the permission, license or lease of Hasson and Duff, the plaintiffs were entitled to recover. True, there was an offer to prove such a possession by the plaintiff's grantor but he was adjudged incompetent for that purpose and the offer was rejected. If the learned court thought there was any evidence in the case sufficient to warrant such a belief the attention of the jury should have been directed to it, and they ought, under the circumstances, to have been advised that the rejected offer should have no place in their deliberations. In other words they should have been instructed that their belief must rest on the evidence in the case, uninfluenced by an offer of evidence which was excluded. The instructions in regard to the possession of McQuaide ignored the testimony of Trauerman and Meyers, which was to the effect that he had exclusive possession of the lots from 1860 to 1865, and that he was succeeded in that possession by Greenwald and Kahn, who maintained it for nineteen years. In the instructions respecting the possession of the latter there was no reference to the admission in regard to it, or to the admission of their payment of taxes. In the last paragraph of the general charge the jury were told that " generally where there is a long lease the property is taxed in the name of the tenant," although there was no evidence in the case of such a practice. In short it appears to us that the tendency of the charge considered as a whole was to unduly depreciate the defendant's claim, while giving to the plaintiffs' contention all the prominence and consideration it deserved.

The specifications of error are sustained, the judgment is reversed and a venire facias de novo is awarded.