## G. B. R. OIL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92604.    Promulgated October 18, 1939.

*Robert Ash, Esq.,* and *J. D. Anderson, C. P. A.,* for the petitioner.
*James H. Yeatman, Esq.,* and *M. L. R. Wade, Esq.,* for the respondent.

## OPINION.

BLACK: There is no dispute in this proceeding as to petitioner's net income for the taxable year. Petitioner's net income as shown on its income tax return was $36,109.32 and petitioner paid the normal tax thereon of $4,334.21, which did not include any surtax because of undistributed profits. By certain adjustments made in petitioner's income for the taxable year, the Commissioner has determined petitioner's corrected net income to be $38,430.31. This results in an increase of $301.73 in petitioner's normal tax over that shown on its return. This part of the deficiency petitioner does not contest.

Petitioner does contest the surtax of $6,603.73 which the Commissioner has computed under the provisions of section 14 of the Revenue Act of 1936. Petitioner contends that it is entitled to a credit under section 26 (c) (2) of the Revenue Act of 1936 of the entire amount which the Commissioner has held to be undistributed net income within the meaning of the statute and subject to the surtax provided in section 14. Section 26 (c) (2) is printed in the margin.[1]

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written

The Commissioner, in his deficiency notice, determined that the credit claimed by petitioner does not meet the requirements of "section (c) (1) and (2) of the Revenue Act of 1936." Petitioner, in its brief, does not claim that section 26 (c) (1) is applicable and it appears that it is not. Therefore, we have not printed (c) (1) in the margin.

The Board cases which have dealt with the surtax on undistributed profits under the 1936 Act have dealt with the application of section 26 (c) (1) and are, therefore, not applicable to this proceeding. See *Crane Johnson Co.*, 38 B. T. A. 1355; affd. (C. C. A., 8th Cir.), 105 Fed. (2d) 740; *Cooperative Publishing Co.*, 40 B. T. A. 466. We are cited to no Board or court case, either by petitioner or respondent, which construes section 26 (c) (2), *supra*. Section 26 (c) (2) was not contained in the 1936 Revenue Bill, either as it passed the House or the Senate, but was added in conference between the two Houses. Therefore, nothing with reference to this particular provision is contained either in the Report from the Committee on Ways and Means of the House or in the Report of the Finance Committee of the Senate, and no comment is made upon it in the Conference Report. That portion of article 26-2 of Regulations 94 which relates to section 26 (c) (2) of the Revenue Act of 1936 is printed in the margin.[2]

---

contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

[2] (c) *Disposition of profits of taxable year.*—Under the provisions of section 26 (c) (2) a corporation is allowed a credit in an amount equal to that portion of the earnings and profits of the taxable year which, by the terms of a written contract executed by the corporation prior to May 1, 1936, and expressly dealing with the disposition of the earnings and profits of the taxable year, it is required within the taxable year to pay in, or irrevocably to set aside for, the discharge of a debt incurred on or before April 30, 1936. The credit is limited to that amount which is actually so paid or irrevocably set aside during the taxable year pursuant to the requirements of such a contract.

Only a contractual provision which expressly deals with the disposition of the earnings and profits of the taxable year shall be recognized as a basis for the credit provided in section 26 (c) (2). A corporation having outstanding bonds is not entitled to a credit under a provision merely requiring it, for example, (1) to retire annually a certain percentage or amount of such bonds, (2) to maintain a sinking fund sufficient to retire all or a certain percentage of such bonds by maturity, (3) to pay into a sinking fund for the retirement of such bonds a specified amount per thousand feet of timber cut or per ton of coal mined, or (4) to pay into a sinking fund for the retirement of such bonds an amount equal to a certain percentage of gross sales or gross income. Such provisions do not expressly deal with the disposition of earnings and profits of the taxable year. A contractual provision, however, shall not be considered as not expressly dealing with the disposition of earnings and profits of the taxable year merely because it deals with such earnings and profits in terms of "net income," "net earnings," or "net profits."

In determining whether the claimed credit of a corporate taxpayer falls within section 26 (c) (2) and the regulations promulgated thereunder, three things seem to be necessary:

(1) There must be a written contract executed prior to May 1, 1936, which expressly deals with the disposition of earnings and profits of the taxable year.

(2) The credit relates to that portion of the earnings or profits which are required to be paid or irrevocably set aside in the discharge of a debt.

(3) The credit is allowable to the extent that the money has been so paid or set aside.

We shall give consideration to these three necessary conditions as disclosed by the facts of the instant case.

(1) We find that all the written contracts of assignment were executed prior to May 1, 1936. As to this, there is no dispute between the parties. Did these contracts "expressly" deal with the disposition of earnings and profits of the taxable year? The word "express" is defined by Webster's New International Dictionary, Second Edition, Unabridged, as follows:

Directly and distinctly stated; expressed, not merely implied, or left to inference; as an express commitment; hence definite, clear, explicit, unmistakable; not dubious or ambiguous; as express consent; express command.

The contracts in question directed, authorized, and empowered the Republic National Bank & Trust Co. to "receive and collect and hold all sums of money of every character whatsoever" from the oil leases in question. Thus it seems to us that the contracts in question not only assigned to the bank that portion of petitioner's "earnings and profits" which resulted from the operation of these properties, but the entire gross receipts therefrom as well. It is true that these written assignments did not refer specifically to the taxable year 1936, but the language of the assignments was certainly broad enough to include the taxable year 1936 and the parties have so construed the contract in their dealings with each other.

(2) As we have already stated, by these written contracts of assignment, not only a portion of petitioner's earnings and profits were required to be paid to the Republic National Bank & Trust Co. in discharge of its debt, but all of the receipts from the property were required to be so paid. All of petitioner's income for 1936 came from these oil properties except $154. The evidence shows that all of the gross receipts from these oil properties were in fact paid to the bank and that it then permitted petitioner to use sufficient of the funds for its necessary operating expenses and certain development costs incurred in bringing in new oil wells on the property. We do not see where this concession made by the bank to the petitioner affects in any way the validity of its assignments of all the earnings

from these oil properties to the bank or in any way voids the application of section 26 (c) (2).

(3) The record shows that $52,703.81 was actually paid to the bank from these oil receipts during the taxable year on its indebtedness. The fact that the amount of these payments exceeds petitioner's net taxable income as determined by the Commissioner in the notice of deficiency is probably due to statutory depletion allowances and other items which, although affecting taxable net income, do not affect gross receipts. But be that as it may, the $52,703.81 which petitioner has paid to the bank on its indebtedness out of these oil receipts in 1936 is considerably greater than petitioner's net income as determined by the Commissioner. It had to be paid under the terms of the written assignments which were executed prior to May 1, 1936, and we think petitioner is entitled to the credit which it claims under the provisions of section 26 (c) (2). Petitioner had no right to disburse any of these oil receipts to its stockholders until its indebtedness to the bank was paid, and in the taxable year before us it made no such distribution.

The general purpose of section 26 (c) (2), it seems to us, is to give a credit where a dividend paid credit can not be secured. In other words, the basic intent of Congress seems to have been to include in the provision only contracts which inevitably require in their performance a drawing on current earnings, thus removing current earnings as a source of dividend payments. See Paul and Mertens, par. 32 A. 46, 1938 cumulative supplement.

Respondent in his brief cites no authority in support of his contention, but, after quoting the language of the assignments from petitioner to the bank, says:

We are unable to find in these contracts or assignments any provision which expressly deals with the disposition of petitioner's earnings and profits of the taxable year.

It is true, as we have already said, that the assignments in question do not expressly refer to "earnings and profits" as such, but they certainly do require that all of petitioner's gross receipts from these properties be paid to the bank and that would certainly include all "earnings and profits" from them.

Respondent says in his brief that petitioner "could have declared a dividend out of its earnings and profits of the taxable year and paid same with borrowed money, notes, credits, or in stock." Perhaps it could have done so. We do not consider that is a matter which we have to decide. Even assuming that it is so, we do not see where that fact affects the application of the credit provided by section 26 (c) (2). We sustain petitioner in this assignment of error.

Reviewed by the Board.

*Decision will be entered under Rule 50.*