MICHIGAN SILICA COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96786. Promulgated March 5, 1940.

*Benjamin E. Jaffe, Esq.*, and *R. M. O'Hara, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

## OPINION.

LEECH: This is a proceeding to redetermine a deficiency in income tax of $8,965.21 for the calendar year 1936. The only issue submitted is whether petitioner is entitled to a credit, under section 26 (c) (2) of the Revenue Act of 1936, because of a contract requiring it to deposit a certain monthly sum in a sinking fund for the retirement of bonds.

The facts were stipulated and are so found.

Petitioner is a corporation organized under the laws of Michigan. It is engaged in the production and sale of sand. On January 1, 1936, it was obligated on outstanding first mortgage, 7 percent sinking fund gold bonds in the amount of $140,700.

These bonds were originally issued and dated August 1, 1925, and were to mature August 1, 1935. The issue was at all times secured by a trust indenture originally executed in favor of the Security Trust Co. of Detroit, Michigan. Prior to November 14, 1934, the Detroit Trust Co. of Detroit, Michigan, had become the successor trustee under the trust indenture.

On November 14, 1934, the maturity date of the outstanding bonds was extended to August 1, 1939, under the terms of a written agreement between petitioner and the successor trustee.

Article III of the trust indenture provided as follows:

### ARTICLE III

#### Sinking Fund.

Section 1. The Company covenants and agrees that on or before the 10th of each month commencing with August, 1926, it will pay to the Trustee twenty-five cents (25¢) for each ton of sand produced and sold by it during the previous month. In case the company has not received payment for sand so sold, it may defer payment to the Trustee of said sum of twenty-five cents (25¢) per ton until it has received payment, but not for more than sixty (60) days

after such sale. The Company shall, at such times as the Trustee requests, render an account to the Trustee of all sand sold and payments received therefor. The moneys so paid shall be accumulated by the Trustee into a sinking fund, and at least once during each fiscal year of the Company the money in said sinking fund shall be exhausted to One Thousand ($1,000.00) Dollars or less by the redemption of bonds as herein provided. The Company, however, is given the option of purchasing bonds upon the open market, if they can be obtained for par or less, and upon delivery of such bonds to the Trustee for cancellation, the Company shall be entitled to be paid out of the sinking fund the amount paid by it for said bonds, but not more than par and accrued interest.

Pursuant to the above provision, petitioner, during 1936, made monthly payments to the trustee aggregating $26,576.93. These payments represented the aggregate amount due under the above provision for sand produced and sold by petitioner during the months of December 1935 to November 1936, inclusive. The amounts which petitioner was obligated to pay into the sinking fund for sand produced and sold during the twelve months of 1936, and which were so paid in the months from February 1936 to January 1937, inclusive, totaled $26,828.88. The monthly payments made to the trustee for the sinking fund were in all instances based upon the tons of sand produced and sold by petitioner during the preceding month.

Petitioner's net income for 1936, as reported on its return, was $42,857.94. Respondent, in his notice of deficiency, redetermined petitioner's income as being $52,338.59. Petitioner's net income, after giving effect to the stipulation filed in this proceeding, is $43,492.27. During 1936 petitioner paid a dividend of $4,576.

Petitioner, in computing its liability for surtax on undistributed profits in its return for 1936, claimed the payments aggregating $26,828.88 as a credit to which it was entitled under the provisions of section 26 (c) (2) of the Revenue Act of 1936. Respondent, in his determination of a deficiency, disallowed this credit.

The cited statutory provision is as follows:

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*        \*        \*        \*        \*        \*        \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

\*        \*        \*        \*        \*        \*        \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to

pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

The bonds involved here evidence a debt within the meaning of the quoted section. *Le Tulle* v. *Scofield*, 308 U. S. 415; *Commonwealth Commercial State Bank* v. *Lucas*, 41 Fed. (2d) 111. Cf. *Haffenreffer Brewing Corporation*, 41 B. T. A. 443. And that debt, of course, arose when the bonds were issued in 1925.

The trust indenture under which these bonds were issued "required" that ascertainable amounts of money "be irrevocably set aside within the taxable year [1936] in discharge of * * * [that] debt." The fact that petitioner had the option of redeeming bonds or purchasing them does not affect that result. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Garland Coal & Mining Co.* v. *Helvering*, 75 Fed. (2d) 663. Purchased bonds were to be canceled and the debt evidenced thereby thus paid and extinguished. Cf. *Transylvania Railroad Co.*, 36 B. T. A. 333; reversed, 99 Fed. (2d) 69. That is our only concern on this branch of the case.

Was the provision of the trust indenture which "required" the payment of ascertainable amounts into the sinking fund a "provision [which] expressly deals with the disposition of earnings and profits of the taxable year"? We think it was.

The pertinent paragraph in the trust indenture required, among other things, that petitioner pay to the trustee 25 cents for each ton of sand produced and sold by it. These payments were to be made currently by reason of the requirement that on the 10th of each month, payments should be made, based upon the sand produced and sold during the preceding month. As showing that the payments were to be made out of the proceeds of sale, it was provided that in case the company had not received payment for the sand sold, it might defer payment to the trustee until it had received such payment, but for not more than 60 days. It further provided that at such times as the trustee requested, petitioner must render an account of all sand sold and payments received therefor. It was further provided that the trustee must, at least once during the fiscal year of the company, use the money in the sinking fund in excess of $1,000 for the redemption of bonds.

It is true that this provision of the trust indenture does not "expressly" use the term "earnings and profits." The statute, however, does not require that such terms be used in the written contract but only that the written contract contain a provision which "expressly deals with the distribution of earnings and profits of the taxable year." Applying that test, we submit that article III of the trust indenture does expressly deal with the disposition of earnings and profits of

the taxable year. It makes the payment contingent not only upon production, but upon sale. It requires an accounting to the trustee, not only of the tons of sand produced, but of the payments received therefor. It permits the petitioner to defer payments into the sinking fund for sand sold and not paid for.

It seems apparent from the above considerations, that the contract does expressly deal with the disposition of the gross income of the petitioner, and, that being so, it necessarily deals with the disposition of the earnings and profits of the year.

In *G. B. R. Oil Corporation*, 40 B. T. A. 738, a bank had loaned petitioner money to purchase certain oil and gas leases. Petitioner, by written assignments, authorized the bank to receive and collect all sums of money derived from the property, to apply on the indebtedness. There was a further agreement with the bank, which resulted in the bank advancing, out of receipts or through new loans, all the expenses of operation plus certain development costs. Nowhere in the written assignments was there express mention of "earnings and profits", and respondent placed reliance on that fact in support of his contention that the contracts did not contain any provision expressly dealing with the disposition of petitioner's earnings and profits. The Board rejected the respondent's theory, however, saying:

The general purpose of section 26 (c) (2), it seems to us, is to give a credit where a dividend paid credit can not be secured. In other words, the basic intent of Congress seems to have been to include in the provision only contracts which inevitably require in their performance a drawing on current earnings, thus removing current earnings as a source of dividend payments. See Paul and Mertens, par. 32 A. 46, 1938 cumulative supplement.

Respondent in his brief cites no authority in support of his contention, but, after quoting the language of the assignments from petitioner to the bank, says:

"We are unable to find in these contracts or assignments any provision which expressly deals with the disposition of petitioner's earnings and profits of the taxable year."

It is true, as we have already said, that the assignments in question do not expressly refer to "earnings and profits" as such, but they certainly do require that all of petitioner's gross receipts from these properties be paid to the bank and that would certainly include all "earnings and profits" from them.

The theory supporting that opinion of the Board is that gross receipts of petitioner necessarily include "earnings and profits." The petitioner here was in the business of producing and selling sand. That business was a source of its "earnings and profits." Thus, although the trust indenture did not expressly use the term "earnings and profits", it did expressly deal "with the disposition of earnings and profits of the taxable year", since the amounts which were re-

'quired to be paid into the sinking fund in the taxable year were based upon the receipts of the petitioner from the sale of its sand.

Upon the authority of *G. B. R. Oil Corporation, supra,* we reverse the respondent's determination on this issue. See also *Chesapeake Ferry Co.* v. *Early,* —— Fed. Supp. —— (Nov. 28, 1939).

Since it would be impossible to compute any monthly payment due the sinking fund here until after the close of the month, the contested credit shall include the payment for sand sold during December of the taxable year, 1936, even though that payment was not physically made until January 1937. This seems proper on the theory that such payment was made *as of* December, 1936. Cf. *Mason Machine Works Co.,* 3 B. T. A. 745. Moreover, respondent makes no issue as to the amount of the credit.

*Decision will be entered under Rule 50.*