*786 OPINION.
Van Fossan:
The petitioner contends that the amended mortgage indenture and other agreements among the several interested parties, as interpreted and carried out by the parties, constituted an “agreement expressly dealing with the disposition oí earnings and profits of the taxable year”, as provided by section 26 (c) (2) of the Revenue Act of 1936,[1] citing G. B. R. Oil Corporation, 40 B. T. A. 738, and other cases. On this premise it is argued that all of petitioner’s receipts were required by contract to be used in payment of debts incurred prior to May 1, 1936. With greater vigor it is argued that at least to the extent of the payments into the sinking fund of $2.50 per thousand feet of lumber and logs shipped or used by petitioner it comes within the scope of the Board’s decision in Michigan, Silica Co., 41 B. T. A. 511, and thus is entitled to the credit contemplated by the cited section.
We disagree with the former and agree with the latter proposition. Although section 1 of article III of the mortgage, set out in the findings of fact, set up a sinking fund and required all moneys received by the trustees (with certain exceptions) to be paid thereto, this general requirement did not bind the petitioner to pay all receipts to the trustees. The fact that the parties interpreted the agreement as granting entire control of all receipts to Birkelund, who applied them to the retirement of bonds, does not satisfy the statute. Helvering v. Moloney Electric Co., 120 Fed. (2d) 617.
Petitioner’s obligation arose from section 3, which begins: “Payments shall be made in reduction of the principal indebtedness secured hereby in the amounts and at the times and in the method provided for in this section.” The section proceeded to obligate the mortgagor to pay $2.50 per thousand feet of logs and lumber used or sold. The funds so arising were to go to the trustee and be used toward liquidating the principal debt. Section 4 provided for release from the mortgage lien of property sold upon payment into the sinking fund of the agreed price. There is no evidence of any payments under *787 this provision. In our opinion the provision for payments of $2.50 per thousand feet of lumber sold or used brings petitioner within section 26 (c) (2). G. B. R. Oil Corporation, supra; Michigan Silica Co., supra. This was a positive and express restriction,- requiring payment to the trustees and thus to the sinking fund to be used in discharge of a debt. It was entered into prior to May 1, 1936. Although the payment was not specified as to be made out of earnings and profits, we believe it comes within the reasoning of the Board in Michigan Silica Co., supra.
The respondent bases his argument largely on the assumption that the petitioner engaged in activities other than the lumber business and thus was not subject to the payments prescribed in article III, section 3, as amended. In its returns the petitioner listed as “other income” receipts from the company store and sales of electric power, as well as the sale of scrap iron, box wood, etc. The record shows that such items were offset by appropriate deductions in the general operating expense account and do not reflect true items of income.
The activities in which the respondent alleges the petitioner engaged were only incidental to its primary lumber business. The running of the company store obviously was a necessary operation and the generation of electric power was only a byproduct of the business. All of the property of petitioner was comprehended in the agreements of January 8, 1936, and necessarily was the source of any so-called “income” which the two departments of its business might produce.
From the foregoing it follows that for the years 1936 and 1937 the petitioner is entitled to a credit as provided in section 26 (c) (2), limited in amount to the sums paid in each year pursuant to article III, section 3, as amended.
Beviewed by the Board.

Decision will be entered under Buie SO.