MAGNUS BECK BREWING CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102876.   Promulgated January 14, 1942.

*Richard E. Buckley, C. P. A.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

#### OPINION.

LEECH: Respondent determined a deficiency in income tax for the calendar year 1936 in the amount of $11,439.52. Part of that deficiency, to wit, $10,766.15, resulted from the action of respondent in disallowing credit of $47,332.98 under section 26 (c) (2) of the Revenue Act of 1936, in computing the surtax on undistributed profits.

The petitioner is a corporation organized under the laws of the State of New York, on December 23, 1932, with an authorized capital stock of $500,000, and is engaged in the brewing industry. It filed

its income tax return for the calendar year 1936 with the collector of internal revenue for the twenty-eighth district of New York.

In January 1933 the petitioner purchased a building which it furnished as a brewery, and is still located there. In this transaction considerable debts arose and by January of 1934 petitioner was financially involved and required cash. It was unable to secure capital by the sale of its stock. On January 1, 1934, it entered into a "trust" agreement with Frederick W. Drybrough, "trustee", and "its creditors", providing, *inter alia:*

WHEREAS, the CORPORATION is engaged in the brewing business in the city of Buffalo, New York, and has book assets of an amount substantially more than its liabilities, but is unable to meet such liabilities as they mature and desires to pay all of its debts and obligations in full over an extended period and to have extended the time for payment of said liabilities in the manner hereinafter set forth:

\* \* \* \* \* \* \*

THIRD: The CORPORATION specifically agrees to pay to the TRUSTEE, beginning April first, 1934, and until the expiration of this agreement, a stated amount upon each barrel of beer sold by it as hereinafter set forth, such payments to be made on or before Wednesday of each week for all beer sold by it during the previous Calendar Week, the first of such payments to be made on or before Wednesday, April 11, 1934; the rate per barrel to be paid by the CORPORATION to the TRUSTEE shall be as follows:

Fifty cents (50¢) per barrel, on all beer sold during the months of April and May, 1934, and One Dollar ($1.00) per barrel on all beer sold thereafter.

FOURTH: It is mutually understood and agreed that the TRUSTEE shall have the right to waive any such weekly payment required to be made to him by the CORPORATION if he shall deem such waiver expedient and necessary, but any such waiver shall in no wise operate as a waiver of any other or further payment required to be made by the CORPORATION to said TRUSTEE.

\* \* \* \* \* \* \*

EIGHTH: It is mutually understood and agreed that weekly payments made by the CORPORATION to the TRUSTEE shall be held by the said TRUSTEE in trust for the CREDITORS, parties of the third part herein, and said TRUSTEE shall make pro rata distribution of said moneys to the CREDITORS of the First and Second Class from time to time in units of five per cent (5%) or more of the total claims of said CREDITORS, all such payments to be pro rata in proportion to the amounts of their respective claims, until all of said CREDITORS shall have been paid in full.

\* \* \* \* \* \* \*

TENTH: It is further mutually agreed that the books of the CORPORATION shall be open for examination and audit by the TRUSTEE or his duly accredited representative at all times during the usual business hours of the day and that the CORPORATION shall furnish to the TRUSTEE quarterly financial statements, balance sheets and audits made by a duly accredited certified public accountant.

The agreement fixed the salaries of the president, treasurer, and secretary of the company at $100, $75, and $50 per week, respectively. As collateral security for the performance of the trust agreement, petitioner agreed therein to and did execute and deliver to the trustee

two mortgages of $132,000 each, the first being a mortgage on real estate owned by petitioner and the second being a chattel mortgage on the machinery, furniture, equipment, and fixtures of the company, both of which were subsequent to a $25,000 mortgage upon the premises which was extended by the agreement. The amount of $1 per barrel to be paid under the terms of the trust agreement was fixed by the trustee and accountants for the petitioner after going over the sales of petitioner for the month prior to the execution of the contract as an estimate of the profit petitioner would make on each barrel produced and sold, if business conditions were prosperous. Petitioner made weekly payments under paragraph third of the trust agreement, as follows:

| | 1934 | | 1935 | | 1936 | |
| --- | --- | --- | --- | --- | --- | --- |
| | Payments to trustee | Barrels sold | Payments to trustee | Barrels sold | Payments to trustee | Barrels sold |
| January | | 2,063.50 | $1,669.19 | 3,348.00 | $1,870.00 | 3,508.00 |
| February | | 1,729.00 | 1,605.20 | 3,360.25 | 1,981.50 | 3,514.50 |
| March | | 2,559.00 | 1,863.62 | 4,442.75 | 1,893.00 | 4,276.75 |
| April | $1,231.25 | 2,947.00 | 2,487.36 | 4,423.75 | 3,593.50 | 4,377.00 |
| May | 2,535.99 | 4,004.75 | 2,130.12 | 4,762.50 | 4,776.00 | 5,590.75 |
| June | 4,341.87 | 5,140.75 | 4,860.50 | 5,456.00 | 6,997.00 | 6,291.50 |
| July | 6,909.00 | 5,811.00 | 7,244.50 | 6,737.75 | 6,893.00 | 7,496.25 |
| August | 5,134.39 | 5,955.75 | 7,438.75 | 6,794.50 | 8,254.00 | 7,334.50 |
| September | 4,217.29 | 3,959.00 | 4,877.00 | 4,649.50 | 6,003.00 | 6,132.25 |
| October | 3,909.76 | 4,073.75 | 4,343.25 | 4,825.25 | 5,071.98 | 5,766.75 |
| November | 1,838.92 | 3,922.75 | 4,426.00 | 4,696.25 | | 4,973.25 |
| December | 659.35 | 3,867.00 | 5,626.00 | 4,149.75 | | 5,485.25 |
| Total | 30,777.82 | 46,033.25 | 48,571.49 | 57,646.25 | 47,332.98 | 64,746.75 |

The business of petitioner was seasonal and during the last two months of 1936, which was its off season, it was allowed by the trustee to reduce "payment to what we were able to pay." The petitioner had an oral understanding with the trustee that it should pay its indebtedness from earnings. By virtue of the payments on account of beer produced and sold by petitioner, under the trust agreement, from 1934, that indebtedness was completely paid off during 1937 and the assets of the company were thereafter free of these liabilities. The annual profits of petitioner, together with the barrels of beer sold and profits per barrel, upon an annual basis from 1933 to and including 1939, follow:

| | Profits for year | Barrels sold | Profit per barrel |
| --- | --- | --- | --- |
| 1933 | $2,052.05 | 13,014.25 | $0.16 |
| 1934 | [1] 6,805.46 | 46,033.25 | [1] .15 |
| 1935 | 50,608.31 | 57,646.25 | .88 |
| 1936 | 60,415.96 | 64,746.75 | .93 |
| 1937 | 47,149.29 | 74,148.75 | .63 |
| 1938 | 17,246.93 | 70,674.50 | .24 |
| 1939 | 2,621.53 | 70,018.75 | .04 |

[1] Loss

The financial position of the petitioner constantly improved from 1934. The payment of the indebtedness secured by the trust agreement was completed in 1937. That agreement was in effect only until 1938.

The petitioner paid the trustee the sum of $47,332.98 during the calendar year 1936, by virtue of the provisions of paragraph third of the trust agreement hereinabove quoted.

The petitioner, in its income tax return for that year, credited such amount in the computation of its surtax on undistributed profits, under section 26 (c) (2) of the Revenue Act of 1936.[1] Respondent disallowed the credit. The propriety of that disallowance presents our only issue.

The petitioner contends that by the quoted third and eighth paragraphs of the trust agreement it was required to make the payments, the aggregate of which is here in controversy.

Respondent denies that those provisions or any others of the contract require that the payments per barrel of beer sold shall be made from earnings or profits of the petitioner for the taxable year or, in fact, earnings and profits at all. It is his position that the contract makes no reference to the source from which the payments are to be made, that they are payable at all events, regardless of whether there be earnings or profits. He argues that this construction is borne out, not only by the wording of the contract, but by its mutual construction by the parties thereto as evidenced by the fact that in 1934 the petitioner paid $30,777.82 under the contract, whereas its operations, during that year, resulted in a loss of $6,805.46.

We agree with petitioner. We think that the provisions of the written contract, upon which petitioner relies, require that the contested payments, per barrel of beer sold, be made from the receipts from such sales. Those receipts necessarily included "earnings and profits of the taxable year", if such existed. That is sufficient to satisfy the pertinent condition of the statute. The contested credit is allowed. *Saginaw & Manistee Lumber Co.*, 45 B. T. A. 780;

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

    *        *        *        *        *        *

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

**82**

*Michigan Silica Co.*, 41 B. T. A. 511 (on appeal, C. C. A., 6th Cir.). Cf. *Helvering* v. *Moloney Electric Co.*, 120 Fed. (2d) 617; *Cumberland Portland Cement Co.*, 44 B. T. A. 1170.

*Decision will be entered for the petitioner.*