CRANE JOHNSON COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 91809.   Promulgated December 8, 1938.

*John A. Cull, C. P. A.*, for the petitioner.
*W. R. Lansford, Esq.*, for the respondent.

#### OPINION.

OPPER: This proceeding involves a deficiency in income tax of $1,707.36 for the year 1936. Petitioner is a corporation incorporated in 1903 under the laws of the State of North Dakota. Among other facts, all of which are found, it is stipulated that "as of January 1, 1936 the petitioner had a deficit of at least $21,251.40" and that "the records prior to January 1, 1929 are not susceptible to analysis to

definitely show whether this deficit occurred from operating losses or capital distributions in excess of earnings or was affected by other adjustments." Its "net income for income tax computation for the year 1936 is $13,450.76." No distributions to stockholders were made during the taxable year. Petitioner claims to be entitled to a credit in the amount of its entire current income against the surtax on undistributed profits imposed by section 14 of the Revenue Act of 1936, which would free it from that surtax. The credit provision claimed to apply is section 26 (c) (1), respecting contracts restricting the payment of dividends. It allows credit for:

An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

Petitioner argues that nothing could be distributed by it because of section 4543 N. D. Compiled Laws of 1913, which prohibits the payment of dividends by corporations except out of surplus. It claims that its charter constitutes in law a contract with the State (*Dartmouth College* case, 4 Wheat. 518) which contract includes all statutes of the state applicable to corporations.

Whether or not under other circumstances the corporate charter and statutes of the state could be said to be a written contract "executed by the corporation," any ambiguity in the provision now under consideration is dispelled by reference to its legislative history. As it passed the House of Representatives the Revenue Bill of 1936 contained three distinct relief provisions imposing in lieu of the graduated undistributed profits tax flat rates of tax irrespective of whether dividends were paid. As explained in detail in the Ways and Means Subcommittee and Committee Reports [1] the provisions were designed respectively for the relief of corporations having deficits (section 14), corporations having outstanding contracts not to pay dividends (section 15), and corporations having outstanding indebtedness (section 16). The provision for corporations having deficits [2] would clearly have applied to the petitioner. [3]

---

[1] House Report No. 2475, 74th Cong., 2d sess., p. 8; Subcommittee Report, p. 6.

[2] SEC. 14. ACCUMULATED EARNINGS AND PROFITS LESS THAN ADJUSTED NET INCOME.

(a) GENERAL RULE.—If the accumulated earnings and profits of the corporation as of the close of the taxable year (computed without diminution by reason of the distribution during the taxable year of earnings and profits, or by reason of the taxes imposed by this title for the taxable year) are less than the adjusted net income, the tax imposed by section 13 shall, in lieu of being computed under section 13, be computed by adding:

(1) A tax of 15 per centum of the excess of the adjusted net income over such accumulated earnings and profits; and

(2) A tax upon the remainder of the adjusted net income (less the tax under paragraph (1)) computed under section 13 as if the adjusted net income were equal to the amount of such remainder so reduced.

[3] As stated in the report of the Ways and Means Committee (footnote 1, *supra*) which proposed a 22½ percent rather than a 15 percent tax:

The Senate changed the undistributed profits tax into a flat rate surtax. It simultaneously struck out sections 14, 15, and 16 [4] but retained the principle of relief for corporations under contract not to pay dividends (section 15 of the House Bill) by allowing them a credit against the undistributed profits surtax.[5] Sec. 26 (c) (1). A floor amendment [6] restored the relief for corporations under contract to pay indebtedness, by inserting a similar credit for them. Sec. 26 (c) (2). But no relief provision was restored for deficit corporations generally. By changing the definition of dividends a "dividends paid" credit was allowed to deficit corporations which distribute current earnings,[7] but no credit was allowed for those which do not distribute.[8]

It does not appear that this omission was unintentional. On the contrary the Finance Committee's explanation [9] of the change in the dividend definition indicates that the reason for the omission may

---

"It has been recognized that in certain cases corporations cannot pay out dividends or that sound policy demands the nonpayment of dividends. Therefore, in certain cases, a flat rate of tax is imposed on corporate incomes, or parts thereof, in lieu of the undistributed profits tax proposed in the general case.

*Deficits.*—For example, section 14 of the bill provides that corporations with a deficit shall pay a tax of 22½ percent on the amount of earnings necessary to make up this deficit and only come under the new plan in respect to earnings in excess of this deficit, and in excess of the tax paid at the 22½ percent rate. This rule is more accurately stated in the section.

[4] H. R. 12395, Senate Amendments, Nos. 46 and 48, 74th Cong., 2d sess.; Congressional Record, vol. 80, part 8, pp. 8790, 8791, 74th Cong., 2d sess.

[5] Senate Report No. 2156, 74th Cong., 2d sess., p. 12 :

"Instead of having a graduated undistributed-profits tax like the House bill with rates ranging as high as 42.5 percent, your committee has adopted a flat rate of 7 percent. By this moderate rate your committee has eliminated most of the complicated relief provisions in the House bill relating to debt and deficit corporations. However, the principle of the House bill affording relief to corporations which are unable to pay dividends because of express prohibitions in contracts entered into prior to March 3, 1936, have been retained for the purpose of the 7-percent undistributed-profits tax."

[6] Congressional Record, vol. 80, part. 8, p. 9071, 74th Cong., 2d sess., and see Conference Report, Revenue Bill of 1936, House Report No. 3068, p. 4.

[7] SEC. 115. DISTRIBUTION BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

[8] Although a graduated rate was later substituted for the flat surtax proposed by the Senate (Revenue Act of 1936, sec. 14), the credit provisions remained unchanged.

[9] SEC. 115 (a). DIVIDENDS OUT OF CURRENT EARNINGS.

In order to enable corporations without regard to deficits existing at the beginning of the taxable year to obtain the benefit of the dividends paid credit for the purposes of the undistributed profits surtax, section 115 (a) changes the definition of a dividend so as to include distributions out of the earnings or profits of the currrent taxable year. The amendment *simplifies the determination* by providing that distributions during the year, not exceeding in amount the current earnings, are dividends, constituting taxable income to the shareholder and a dividends paid credit to the corporation. As respects such dividends the *complicated determination of accumulated earnings or profits is* rendered unnecessary. [Emphasis added.] Senate Report No. 2156, 74th Cong., 2d sess., p. 18.

have been the difficulty of determining the existence of accumulated earnings and profits; that is, whether or not there is a true deficit. Precisely that difficulty is illustrated by the present case. Although it is stipulated that a deficit exists, the facts also show that the stipulated deficit reflects only the present book condition and that it can not be shown whether this represents an actual deficit or merely book adjustments prior to 1929, which may or may not have been artificial or improper. The underlying plan of this surtax is to allow credit only for actual distributions. The petitioner, having failed to bring itself clearly within any of the exceptions to that plan, must be governed by the general principle. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

Petitioner contends further that at least if construed to apply to the present circumstances the undistributed profits surtax is beyond the constitutional power of Congress. We are thus unavoidably required to give a limited consideration to its validity. *Rita O'Shaughnessy, Executrix*, 21 B. T. A. 1046.

Constitutionality of the measure is attacked on three grounds. First, petitioner claims that it is not a tax on incomes within the Sixteenth Amendment and therefore is unconstitutional because not apportioned among the states according to population as required by Article I, section 2, of the Constitution. What was said by the Supreme Court in *Helvering* v. *National Grocery Co.*, 304 U. S. 282, we believe to be equally applicable here and to be conclusive of the question:

It is said that the statute is unconstitutional because the liability imposed is not a tax upon income, but a penalty designed to force corporations to distribute earnings in order to create a basis for taxation against the stockholders. If the business had been carried on by Kohl individually all the year's profits would have been taxable to him. If, having a partner, the business had been carried on as a partnership, all the year's profits would have been taxable to the partners individually, although these had been retained by the partnership undistributed. See *Heiner* v. *Mellon*, Nos. 144 and 145, decided May 16, 1938. Kohl, the sole owner of the business, could not by conducting it as a corporation, prevent Congress, if it chose to do so, from laying on him, individually the tax on the year's profits. If it preferred, Congress could lay the tax upon the corporation, as was done by section 104.

Second, petitioner claims that this surtax violates the Tenth Amendment in that "it attempts to regulate the internal affairs of the state in its relation to its corporations by imposing a surtax for failure to distribute", thus disturbing "the whole economic policy of the corporation", "by attempting to state what are dividends and what would be a return of capital contrary to the laws of the state of incorporation", and by offering an inducement for the declaration of dividends in violation of state law which would subject the directors and the corporation to penalties. A similar argument was also advanced and

rejected in *Helvering* v. *National Grocery Co.*, *supra*. The statute before us is not invalid "because it interferes with the power to declare or to withhold dividends—a power which the State conferred upon the corporation. The statute in no way limits the powers of the corporation", as Mr. Justice Brandeis said in that case. Any corporation not distributing its profits prevents the imposition of the individual surtax thereon. An obstruction to Federal taxation is thus created. " 'Congress in raising revenue has incidental power to defeat obstructions to that incidence of taxes which it chooses to impose.' *United Business Corporation* v. *Commissioner*, 62 F. (2d) 754, 756." *Helvering* v. *National Grocery Co.*, *supra*.

Third, petitioner alleges that our interpretation of section 26 (c) makes this surtax violative of the due process requirement of the Fifth Amendment. The crux of this contention as stated in petitioner's reply brief is that:

> It discriminates unfairly between corporations of the same class by allowing a dividend paid credit under Section 26 (c) to corporations having written contracts of a particular type, but not allowing a similar credit to other corporations with the same legal obligations differently evidenced. It discriminates unfairly against the weaker corporation not permitted under state law to pay dividends and in favor of the stronger corporation in a position to legally pay dividends and thus escape tax liability.[10]

Congress undeniably has the power to levy a tax, graduated or otherwise, on the current income of all corporations, including those having deficits. *Foley Securities Corporation*, 38 B. T. A. 1036; *Long Beach Improvement Co.*, 5 B. T. A. 590; see *Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215, 219; *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1. Petitioner has not been singled out for special taxation. It comes within the general ambit of the tax. Rather it is in reality complaining of the failure to include it in specific exceptions granted to corporations situated in some respects like itself but in other respects differently. Thus it is doubtful whether the petitioner is in a position to raise the constitutional question since

---

[10] These arguments as set out more fully in petitioner's main brief are:

a — It is unreasonable, arbitrary and capricious, at least as to deficit corporations in that it encourages and rewards violation of state law, exacts a penalty for restoring impaired capital, does not conform to established income tax principle of taxing according to ability to pay, exacts a penalty for adherence to soundly established and regularly accepted accounting principles and is an excessive super tax approaching confiscation.

b — It discriminates unfairly between corporations in the same class, by favoring the strong over the weak, by specifically relieving insolvent corporations and other corporations of certain types and failing to relieve the weak but struggling corporations, by allowing a dividend paid credit to corporations which give up and liquidate within the year but providing none for deficit corporations attempting to carry on, by allowing credits under Section 26 (c) to corporations having written contracts of a particular type but not allowing similar credits to other corporations with the same legal obligations differently evidenced, by allowing greater credits under Section 26 (c) to corporations having one large contract than to corporations with the same total obligation made up of several smaller contracts and by failing to provide any dividend credit to corporations suffering a capital loss during the year without having prior earnings at the beginning of the year.

the burden of a tax deduction allowed to others falls in too remote and indefinite a way upon the remaining taxpayers. See *Frothingham* v. *Mellon*, 262 U. S. 447, 486. But, in any event, deductions of this type are a matter of legislative grace within the sound discretion of Congress. *New Colonial Ice Co.* v. *Helvering, supra; Davis* v. *United States*, 87 Fed. (2d) 323. Petitioner can not complain if this grace did not extend to cover it.

The due process limitations on the taxing power are that the means be "appropriate to the end", *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85; and that the end be taxation rather than confiscation, *Brushaber* v. *Union Pacific Railroad Co., supra*. See also *Stella S. Housman*, 38 B. T. A. 1007. The objective of the present statute, like the personal holding corporation provisions involved in *Foley Securities Corporation, supra*, is to subject the income of the corporations concerned "to surtax either in the hands of the stockholders or in the hands of the corporations themselves." [11] In this case, as in the *Foley* case, that end is accomplished by means which we can not say are inappropriate. Since the income is not taxable to the stockholders it is taxed to the corporation.

The fact that in certain instances corporations unable for other reasons to distribute their income are expressly exempted or are allowed deductions having a similar effect, does not make the tax confiscatory as to the petitioner. Congress in those instances sacrificed its general objective to make what it considered desirable exceptions. There are many other conceivable situations where distribution of income is difficult or impossible, for which Congress did not think it necessary to provide. Whenever deductions or exemptions are allowed there are necessarily taxpayers in closely related situations who remain subject to the general rule. "The difficulty of adjusting any system of taxation so as to render it precisely equal in its bearing is proverbial and such nicety is not even required of the states under the equal protection clause, much less of Congress under the more general requirement of the due process of law in taxation." *La Belle Iron Works* v. *United States*, 256 U. S. 377. The question is whether the concept underlying the statutory treatment "is one that an enlightened legislator might act upon without affront to justice." *Burnet* v. *Wells*, 289 U. S. 670.

The failure of Congress to except deficit corporations generally from the underlying concept of the undistributed profits surtax may be justified on several grounds. Among these are the ease with which a deficit can be created by mere bookkeeping changes; [12] the administrative difficulties of investigating the actual as distinguished from the

---

[11] See Ways and Means Committee Report, House Report No. 2475, 74th Cong., 2d sess., p. 4.

[12] See *La Belle Iron Works* v. *United States, supra*, p. 390.

apparent condition and value of the corporate assets, and the extent of the liabilities, both subject to constant fluctuations;[13] and, particularly pertinent in this case, the fact that the deficit may not be an operating item, as shown by the stipulation of facts, but may have arisen from the management's own improper action in making distributions out of capital. With these possible bases for its action in mind, we can not conclude that Congress acted unreasonably in withholding from deficit corporations the deductions it allowed to certain others, if indeed our determination of that question is required. Certainly there is no discrimination greater than those complained of in the *Brushaber* case, *supra*, and none which may reasonably be said to amount to confiscation.

Reviewed by the Board.

*Decision will be entered for the respondent.*