BROCKWAY GLASS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 100367.    Promulgated January 9, 1941.

*Omar G. Olds, Esq.*, for the petitioner.
*William A. Schmitt, Esq.*, for the respondent.

268

OPINION.

DISNEY: The parties present for consideration two questions: (1) Whether the petitioner is entitled to credit, under section 26 (c) (2) of the Revenue Act of 1936,[1] in the amount of $23,160.31, instead of $5,000 allowed by the Commissioner; (2) whether capital stock value declared in an original return can be increased in amended return for error alleged in the value first declared. We shall consider the issues separately, in that order.

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

\* \* \* \* \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

1. Was the petitioner entitled to credit for more than the $5,000 allowed by the respondent, under the language of the trust indenture and the terms of the above statute?

The statute involves a credit; it is, therefore, to be strictly construed. *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46. Under it the petitioner is entitled to credit for an amount equal to earnings and profits *of the taxable year* which is *required* to be paid *within the taxable year* in discharge of a debt "to the extent that such amount has been so paid." The *requirement*, however, must be "by a provision of a written contract * * * which provision *expressly* deals with the disposition of earnings and profits of the taxable year." (Italics supplied.) The petitioner contends, and the respondent denies, that above the $5,000 allowed by the Commissioner earnings and profits of the taxable year were *required* to be paid, and that this requirement was by a provision which expressly deals with the disposition of such earnings and profits of the year. The question seems to be one of first impression. Respondent cites no authority and petitioner none, except general authority on statutory construction.

The indenture provided that the petitioner would *each year* reserve out of earnings and not distribute by dividend $5,000 for the purpose of providing a reserve sufficient to meet the payment of $50,000 of bonds last maturing. The petitioner stresses this purpose, and argues that under section 27 (a) (4) of the Revenue Act of 1938 there would be no doubt about the allowance of credit, since therein credit is given for "Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind, if such amounts are reasonable with respect to the size and terms of such indebtedness", and that the provision of the 1938 Act simply expresses the intent which we should impute to section 26 (c) (2) of the Revenue Act of 1936. We are not impressed by that argument. The language of section 27 (a ) (4) of the Revenue Act of 1938 is in this respect the same as in section 351 (b) (2) (B) of the Revenue Act of 1936 (as amended by section 355 (b) of the Revenue Act of 1937). The Act of 1936 applied to personal holding companies. Petitioner is not shown to be such. The presence of the language in section 351 of the 1936 Act indicates, we think, that only a personal holding company was given the privilege of a credit for "Amounts used or set aside to retire indebtedness" and not limited to an amount covered by a contractual provision *expressly* dealing with the earnings and profits of the taxable year. We think the language of the 1938 Act does not help the petitioner. We find nothing in the committee reports thereon to indicate mere clarification of the intention of section 26 (c) (2) of the Revenue Act of 1936. Nor do we think that the purpose of the bond indenture to provide moneys with which to pay the last $50,000 of bonds is materially helpful here. The question is, in sum, whether

the contract *required* more than $5,000 of the earnings and profits of the taxable year to be paid on the bonds. The petitioner points out the power of the trustee to take action to protect the bondholders, and the letter it wrote demanding, in effect, the reservation from earnings of the taxable year the amount of $23,160.31, the amount for which credit is asked. It is obviously true that the trustee could have foreclosed because of the plain default of the petitioner in failing to reserve $5,000 per year out of its earnings. But could it, under the indenture, have *required* the petitioner to reserve more than $5,000 earnings in the taxable year? After careful consideration of the contract and the statute, we think it could not have done so. The contract, as to any one year, requires a reservation of $5,000 only. There is here involved only one year. The trustee might conceivably have enjoined the payment of dividends of $5,000 in each of the earlier years. But this was not done. We think it could not enjoin payment of dividends above $5,000 in the taxable year, any more than it could have done so in one of the earlier years. The contract, in other words, did not *require* reservation of earnings, by a provision expressly dealing with the disposition of earnings or profits, above $5,000 per year. No paragraph or provision of the contract, save "Item 9"—as to the $5,000 per year—can be said to deal expressly with disposition of earnings and profits. The other provisions of the bond indenture are general, such as are not unusually found, and no express control over disposition of earnings or profits is bestowed upon the trustee. The provision requiring payment of the bonds in the taxable year did not expressly deal with the disposition of earnings and profits. In *G. B. R. Oil Corporation*, 40 B. T. A. 738, 744, construing the section here examined, we said:

The general purpose of section 26 (c) (2), it seems to us, is to give a credit where a dividend paid credit cannot be secured. In other words, the basic intent of Congress seems to have been to include in the provision only contracts which inevitably require in their performance a drawing on current earnings, thus removing current earnings as a source of dividend payments. * * *

We think the petitioner was not, by the contract here relied upon, prevented from paying dividends above $5,000 in the taxable year, and therefore not deprived of dividends paid credit. We conclude and hold that the respondent did not err in limiting credit to $5,000 under section 26 (c) (2).

2. Was the petitioner bound by its declaration of value on its capital stock tax return, or may it amend the declaration as to value after time for filing has expired? The first filing was on July 31, 1936, the value declared $750,000; the second was on April 3, 1937, the declared value $1,250,000. The latter return, with additional amount of tax and penalty and interest remitted therewith, was

returned by the Commissioner about June 28, 1937, with the advice that the amended return was not acceptable. Petitioner's time to file capital stock tax return for the period July 1, 1937, to August 31, 1937, was extended to September 15, 1937, on June 20, 1937, and on September 15, 1937, the petitioner filed a capital stock tax return for the year ended June 30, 1937, declaring a value of $1,394,024.43 and paid the tax. About August 30, 1938, the Commissioner informed petitioner that the value was established at $750,000 by the return filed July 1, 1936, and the value for the year ended June 30, 1937, had been determined to be $894,024.43.

The petitioner's contention on this issue is, in effect, that its first return was grossly erroneous, that the amended return was its first return as required by section 105 of the Revenue Act of 1935, and that the act, if applied to petitioner herein, is contrary to the Fifth Amendment to the Constitution of the United States. The principal authority relied upon is *Haggar Co.* v. *Helvering*, 308 U. S. 389. The Supreme Court in *Riley Investment Co.* v. *Commissioner*, 311 U. S. 55, involving amendment of a return with reference to depletion under section 114 (b) (4) of the Revenue Act of 1934, distinguished the case from the *Haggar Co.* case, *supra*, and held that the return was not a "first return" because it was filed after the expiration of the statutory period for filing the original return. In *William B. Scaife & Sons Co.*, 41 B. T. A. 278, we pointed out that the *Haggar Co.* case, *supra*, involved and emphasized the fact of amendment of capital stock tax return prior to expiration of time for filing the return, and concluded that, since in the *Scaife* case the amendment was submitted after expiration of the period for filing, the valuation could not be changed. We held the same in *Maine Central Transportation Co.*, 42 B. T. A. 350, following the *Scaife* case. We find nothing in the present record to justify a different conclusion. The element of error in the first return was considered in the *Scaife* case. The contention that the statute is unconstitutional has been variously rejected. The cases so holding include *Allied Agents, Inc.* v. *United States*, 88 Ct. Cls. 315; 26 Fed. Supp. 98; *Chicago Telephone Supply Co.* v. *United States*, 87 Ct. Cls. 425; 23 Fed. Supp. 471; certiorari denied, 305 U. S. 628; *Scaife & Sons Co.* v. *Driscoll*, 94 Fed. (2d) 664. We conclude that the act is not shown to be unconstitutional, and that petitioner has not shown error by the Commissioner in the determination of excess profits tax liability.

*Decision will be entered for the respondent.*