*Decision will be entered under Rule 50.*

LAFAYETTE HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101160. Promulgated January 24, 1941.

*Clinton M. Harbison, Esq.*, for the petitioner.
*Stanley B. Pierson, Esq.*, for the respondent.

OPINION.

HARRON: Petitioner claims credits under the terms of section 26 (c) (2) of the Revenue Act of 1936,[1] for purposes of computing the surtax on its undistributed profits. In order to obtain such credit under the pertinent statutory provision it must be shown as fact that the corporation not only paid or irrevocably set aside part of the earnings and profits of the taxable year, but that it was *required* to do so by a provision of a written contract executed before May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year, and that the payment or setting aside of earnings was *in discharge of a debt.* As used in section 26 (c) (2), the word "debt" does not include a debt incurred after April 30, 1936.

The petitioner, in 1920, executed a mortgage trust agreement to secure an issue of bonds which were delivered to the trustee to hold until such time as holders of petitioner's first preferred convertible stock exercised an option to convert that stock into bonds, the trustee being authorized to make such exchange at any time within 25 years from April 20, 1920. Without reference to whether or not in any given year any of the bonds had been issued by the trustee in exchange for stock, the trust agreement provided that petitioner should make sinking fund payments of $5,000 a year, commencing with July 1, 1925. From 1932 on, petitioner did not make the sinking fund payments, so that on July 1, 1936, $25,000 was due the trustee. On July 1, 1936, no bonds had been issued in exchange for stock. Petitioner was not required to make the sinking fund payments from its earnings and profits each year. In fact, in 1932, 1934, and 1935 petitioner's business yielded substantial net earnings and profits, but petitioner did not pay or set aside any portion thereof for the sinking fund.

Petitioner contends that in 1936 and 1937 it was in substance and by contract required to use part of its net earnings for sinking fund payments which were due, and that its financial condition was such

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

*   *   *   *   *   *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

*   *   *   *   *   *

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

that it did pay out of net earnings in 1936 and 1937, respectively, $20,000 and $10,000 to the trustee for the sinking fund. To support these contentions petitioner argues that, because its book account entitled capital surplus showed deficits at the end of 1935, 1936, and 1937 in the respective amounts of $155,945.06, $155,020.68, and $108,916.29, its financial condition was such that the amounts paid to the trustee in 1936 and 1937 must be held to have been paid from current earnings in each year. Petitioner argues further that a provision in the terms of the bonds in question, set forth in the trust agreement of 1920, must be construed as requiring, in 1936 and 1937, that the earnings in each year must be applied to the sinking fund payments said to be in default. Reference to that provision will be made hereafter. Neither contention of petitioner can be approved under the record in this case.

Petitioner reported net income for 1936 and 1937 in the respective amounts of $53,737.84 and $75,094.60, which respondent adjusted to $51,912.41 and $74,136.87, respectively. Respondent refused to allow credits for $20,000 and $10,000 under section 26 (c) (2). Respondent contends that the provision in the mortgage deed of trust under which petitioner claims the credits fails to meet the requirements of section 26 (c) (2) for a written contract, because it does not require a portion of earnings in the taxable years to be used for annual sinking fund payments, and because no debt was incurred prior to April 30, 1936, at which time no bonds had been exchanged for convertible stock. Respondent relies on *Haffenreffer Brewing Co.*, 41 B. T. A. 443; affd., 116 Fed. (2d) 465; and *Spaulding Bakeries, Inc.*, 42 B. T. A. 430, as authority for the proposition that an obligation to set aside funds to retire preferred stock is not an obligation to retire indebtedness, since the stockholder relation is not one of a debtor and creditor.

Admittedly petitioner was not required to set aside earnings each year for sinking fund payments, by any provision to that effect in the mortgage deed of trust. Petitioner argues, however, that defaults in the payments made all annual profits subject to the lien of the mortgage given to secure bonds, when, as, and if issued, and that the rule of *G. B. R. Oil Corporation*, 40 B. T. A. 738, is applicable here. Paragraph 5 of the mortgage deed of trust provides that, in the event of breach of any obligations imposed by the trust on petitioner, all subsequently accruing rents and profits shall pass under the lien of the mortgage, "provided any proceedings are instituted in a court of competent jurisdiction for the enforcement of the lien created by this mortgage, or for the appointment of a receiver or for both of said purposes." The trustee at no time instituted such proceedings as are referred to above. By the end of 1936 petitioner had substantially cured defaults in sinking fund payments and, so far as the record shows, no

proceedings to enforce the lien of a mortgage against petitioner's earnings ever were instituted by the trustee. Since no bonds were issued by the trustee prior to July 2, 1936, there is considerable doubt whether at that date the trustee, under the mortgage deed of trust securing the bonds, had any equitable lien on the earnings from petitioner's property which was covered by the mortgage. It is concluded that paragraph 5 of the trust was not put into operation in the taxable years so as to *require*, as under a written contract, the application of petitioner's earnings in the taxable years in payment of the sinking fund installments. The *G. B. R. Oil Corporation* case is distinguishable on the facts, the circumstances which were present in that case not being present here. If we regard the mortgage deed of trust as the kind of written contract referred to in section 26 (c) (2), for argument, we find no provision therein which inevitably required petitioner to set aside earnings in the taxable years in payment of a debt incurred prior to April 30, 1936. *Belle-Vue Manufacturing Co.*, 43 B. T. A. 12. It has been pointed out previously that the pertinent statutory provision is to be construed precisely as it is written. *Moloney Electric Co.*, 42 B. T. A. 78, 85. Section 26 (c) refers primarily to "Contracts Restricting Payment of Dividends." Petitioner during the taxable years and in prior years paid dividends each year, and, as far as the record shows, at no time regarded the terms of the mortgage deed of trust as a contract restricting payment of dividends. Petitioner's contentions call for a strained construction. See *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46; *Oregon City Manufacturing Co.*, 43 B. T. A. 212.

Petitioner's contentions fail for two other reasons. The record does not prove conclusively that the $20,000 paid to the trustee in 1936, and the $10,000 paid in 1937 were paid from the earnings and profits of each respective year. Also, it can not be held that the payments in the taxable years were paid in discharge of a debt incurred prior to April 30, 1936.

Petitioner's argument that its financial condition was such as to require payment of the sinking fund installments from earnings is without merit. Reliance is placed entirely upon a book deficit in the capital surplus account at the end of each taxable year and upon book entries at the end of each taxable year charging, for the sinking fund payments which were made, the profit and loss account and crediting an account entitled "Earnings Appropriated to Comply with Contract for Bond Retirement." Direct evidence on the source of the payments made in the taxable years is limited. The complete financial condition of petitioner, as would be shown by the profit and loss account and a balance sheet, is not in evidence. The capital account, standing alone in the record, is not conclusive, and it is difficult to understand.

The capital deficit was accumulated from 1928 to 1933, and thereafter it was gradually reduced. From 1928 through 1933 annual dividends in very large amounts were paid each year, even as the capital deficit increased. For the years 1934 and 1935 net profits exceeded paradoxically dividends and other items paid by the respective amounts of $24,104.54 and $16,795.25. In 1936 net profits exceeded dividends and other items paid by $924.38. It is possible that the total sinking fund payments of $30,000 made in 1936 and 1937 were from surplus accumulated in the capital surplus account in the years 1934 and 1935, and the record does not indicate the contrary. The evidence does not disclose that petitioner's financial situation in the taxable years and in the immediately preceding years was such as to demand a construction of the mortgage trust deed as requiring that earnings in the taxable years be paid into the sinking fund. *Belle-Vue Manufacturing Co., supra.* And further, it has been pointed out in *Brockway Glass Co.*, 43 B. T. A. 267, that section 26 (c) (2) allows a credit only for an amount equal to earnings and profits *of the taxable year* which is *required* to be paid *within the taxable year* in discharge of a debt, among other things. If petitioner's contention was sound, in general, which it is not, *arguendo*, the provision in the 1920 mortgage deed of trust provides for a payment of $5,000 per annum *only*. Under the rule of the *Brockway Glass Co.* case petitioner could not validly claim credits in the taxable year for amounts in excess of $5,000 in each year. And, further, petitioner must prove that the sum paid in each taxable year was in fact *paid from earnings and profits of the taxable year*, and, as indicated above, petitioner has failed to so prove beyond doubt.

The convertible first preferred stock was entitled to 6 percent per annum dividends, cumulative, and payable from surplus or net profits. This stock was convertible at any time into bonds, and within 25 years with respect to the bonds referred to in the 1920 mortgage deed of trust. Since no bonds were issued in exchange for stock prior to July 2, 1936, and April 30, 1936, it would appear that any sinking fund created prior to July 2, 1936, must be regarded as a fund for the retirement of outstanding preferred stock. It was possible that no exchanges of stock for bonds would ever be made, and if such proved to be true, the petitioner's agreement to create a sinking fund would represent no more than an agreement to create a fund to retire stock rather than to pay an indebtedness. There is no evidence here to show that the terms and conditions under which the first preferred cumulative convertible stock was issued were such as to make the shares of stock evidence of indebtedness rather than preferred stock, in fact. *Haffenreffer Brewing Co., supra; Spaulding Bakeries, Inc., supra.* Here, as in the cited cases, the preferred stock did not *by its terms* have a definite maturity date. The 25-year conversion period

was first agreed to in the 1920 mortgage deed of trust and it is a limitation upon the trustee thereunder after which time the trustee may not issue the particular bonds referred to in that trust deed in exchange for stock. See also, *May Hosiery Mills, Inc.*, 42 B. T. A. 646. When preferred stockholders exercised the option to exchange stock for bonds, no doubt a debtor-creditor relationship arose, but no exchanges were made until after July 2, 1936. The Commissioner has ruled in his regulations that "An indebtedness evidenced by bonds or other similar obligations issued by a corporation is incurred as of the date such obligations are issued　*　*　*." Art. 26–2 (*c*), Regulations 94. This appears to be a reasonable regulation. Here, there was no bonded debt until July 2, 1936, and thereafter, and whatever part of the sinking fund payments made in 1936 and 1937 can be allocated to the retirement of bonds issued in the taxable years can not be said to represent payments in discharge of a *debt* incurred prior to April 30, 1936, within the terms of section 26 (c) (2).

Petitioner fails on all contentions made and taken together; but petitioner fails primarily because it can not be held that under the terms of a written contract executed by it prior to May 1, 1936, expressly dealing with the disposition of earnings and profits, it was required to pay or set aside earnings in each taxable year for the discharge of a debt within the particular terms of section 26 (c) (2).

*Decision will be entered for the respondent.*