144

PARIS & MT. PLEASANT RAILROAD COMPANY,* PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103578.   Promulgated June 23, 1942.

*T. D. Gresham, Esq.,* for the petitioner.
*Donald P. Moyers, Esq.,* for the respondent.

*Vacated; Order of July 20, 1942; Revised Report, p. 439.

## OPINION.

HARRON: The respondent determined a deficiency in income tax for the year 1937 in the amount of $13,540.88. The deficiency results from the respondent's determination that petitioner is liable for surtax on undistributed profits in the amount of $14,038.97, which is computed by applying the provisions of section 14 (b) of the Revenue Act of 1936 to undistributed adjusted net income in the amount of $68,482.78. Petitioner agrees on the amounts of its taxable net income and its adjusted net income.

Petitioner contends, first, that it is not a corporation which comes within the terms of section 14 (b), because under the provisions of the

Interstate Commerce Act, as amended by the Transportation Act of 1920, it was prohibited from paying any dividends in the taxable year because it had a capital deficit.[1] During the taxable year petitioner's deficit amounted to in excess of $400,000. Petitioner argues, in effect, that before it could pay dividends out of current earnings, it was required to accumulate earnings until the capital deficit was extinguished. Petitioner has not cited us to any other provisions of the Interstate Commerce Act which prescribe what funds are "properly includable in the capital account." Assuming, *arguendo* and without deciding the point, that provisions of the Interstate Commerce Act prevented the petitioner from paying any dividends out of earnings in the taxable year, there is nothing in this case to take it out of the rule of *Crane Johnson Co.*, 38 B. T. A. 1355; affd., 311 U. S. 54; and *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46. In both cases the corporations had existing deficits and they were prohibited by state statutes from paying dividends except out of surplus. Section 26 (c) (1) allows a credit, if dividends can not be distributed without violating the terms of a written *contract* executed prior to May 1, 1936, which expressly deals with the payment of dividends. "The language used in section 26 (c) (1) does not authorize a credit for *statutorily* prohibited dividends." (Italics added.) *Northwest Steel Rolling Mills, Inc.*, *supra*. It provides no distinction here that the statute which, presumably, prohibited petitioner from paying dividends, was a Federal statute. The provisions of the Interstate Commerce Act are not a "contract" within the meaning of section 26 (c) (1). The *Crane Johnson Co.*, and *Northwest Steel Rolling Mills, Inc.*, cases, *supra*, are controlling. Furthermore, petitioner is not a corporation within the classes of corporation specifically exempted from the surtax on undistributed profits by section 14 (d). Section 14 (b) makes the surtax applicable to "every corporation", which means, upon reading section 14 in its entirety, every corporation except those specifically exempted.

For the above reasons, it is held that petitioner is not entitled to a credit in the amount of its adjusted net income, or $68,482.78.

In the alternative, petitioner contends that it is entitled to a credit under section 26 (c) (2) in the amount of $14,000, which represents the amount set aside out of its current earnings of the taxable year to pay $8,000 of bonds principal amount, plus $6,000 of accrued interest. The facts show, and the respondent agrees, that in 1937 petitioner "irrevocably set aside" by paying to the Farmers

[1] The Interstate Commerce Act, as amended by the Transportation Act of 1920, U. S. C. A., Title 49, sec. 20 (a) (12), pp. 292–293, provides in substance that it shall be unlawful for the director of any carrier to participate in the paying of any dividends from any funds properly includable in the capital account.

& Merchants National Bank of Abilene an amount which included the $14,000 in question.[2]

Petitioner is not entitled to a credit under section 26 (c) (2) for the $6,000 paid on accrued interest, because this payment does not come within the terms of the above section. The trust deed did not require that any part of petitioner's earnings in each year should be paid or set aside within the taxable year to pay interest. It is true that the above amount was paid out of current earnings in the taxable year, but petitioner was not bound by contract to apply current earnings to interest on its bonds. The sinking fund provision in the trust deed did not deal with a sinking fund for the payment of interest. The petitioner was free, under the terms of the trust deed, to pay interest out of accumulated earnings, current earnings, borrowings, or any other type of funds, in its own discretion. It has been pointed out that this provision has not been loosely applied. *Belle-Vue Manufacturing Co.*, 43 B. T. A. 12, 17; *Hub Clothing House, Ltd.*, 39 B. T. A. 900; *Eastern Building Corporation*, 45 B. T. A. 188, 192; *Oregon City Manufacturing Co.*, 43 B. T. A. 212; *Lafayette Hotel Co.*, 43 B. T. A. 426.

The above leaves for consideration whether or not petitioner is entitled to a credit under section 26 (c) (2) in the amount of $8,000, which was irrevocably set aside for payment into the sinking fund in the taxable year. The only question is whether or not the $8,000 was paid in accordance with the requirements of a written contract executed prior to May 1, 1936, which expressly dealt with the disposition of earnings and profits of the taxable year. The deed of trust executed July 1, 1912, was continued in effect in all of its terms on February 7, 1935. Under the facts it must be concluded that the deed of trust in all its terms was in effect in 1937. When the holders of 8 bonds held back their consent to the appointment of a successor trustee, for which paragraph seventeenth of the trust deed provided, until it was agreed that petitioner would redeem their bonds, there was no modification of any of the terms of the trust deed, or of paragraph thirteenth, relating to the payment of 5 percent of the gross earnings of each year into a sinking fund. The arrangement made with them, to which Jones consented, did not constitute the making of a new agreement in 1937. Jones' consent simply constituted a waiver of his right, under the default, to have all of the moneys in the sinking fund applied pro rata for the benefit of each bondholder.

---

[2] Petitioner paid to the bank $14,507.60, which included $127.60 for "Federal income tax", leaving $14,380 for principal and interest on the bonds. Petitioner deducted in its return an amount for interest paid in the taxable year which included $380, so that the amount involved in the issue is $14,000, of which $6,000 was a payment for accrued interest.

Under the terms of the sinking fund provision petitioner is required to make sinking fund payments until all of its bonds are paid. It was required to deposit $22,657.14 in the sinking fund in 1937, or 5 percent of its gross earnings. Petitioner set aside $8,000. The entire amount was used to redeem 8 bonds in the principal amount of $8,000. Paragraph thirteenth of the trust deed provided, among other things, that the trustee could use money in the sinking fund to purchase or call bonds at not more than $105 and accrued interest. Respondent does not contend that the $8,000 was not a payment into the sinking fund. It is concluded that the payment to the bank of $8,000 for transfer to the new trustee was a sinking fund payment, and that it was made pursuant to the requirements of a written contract executed prior to May 1, 1936. The payment comes within the provisions of section 26 (c) (2), and petitioner is entitled to a credit in the amount of $8,000. Cf. *Brockway Glass Co.*, 43 B. T. A. 267, 270, 271, where the taxpayer deposited in a sinking fund *more* than it was required to set aside out of earnings in the taxable year, as contrasted with petitioner's setting aside *less* than was required. See also *Michigan Silica Co.*, 41 B. T. A. 511; affd., *Commissioner* v. *Michigan Silica Co.*, 124 Fed. (2d) 397; *Strong Manufacturing Co.*, 41 B. T. A. 1273; affd., *Commissioner* v. *Strong Manufacturing Co.*, 124 Fed. (2d) 360; certiorari granted, 317 U. S. 102; *Saginaw & Manistee Lumber Co.*, 45 B. T. A. 780.

*Decision will be entered under Rule 50.*