PARIS & MT. PLEASANT RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.[1]

Docket No. 103578.   Promulgated August 4, 1942.

*T. D. Gresham, Esq.*, for the petitioner.
*Donald P. Moyers, Esq.*, for the respondent.

---

[1] The report in this proceeding which was promulgated on June 23, 1942, 47 B. T. A. 144, was vacated by order of the Board. This report supersedes the earlier report, *supra*.

442

OPINION.

HARRON: The respondent determined a deficiency in income tax for the year 1937 in the amount of $13,540.88. The deficiency results from the respondent's determination that petitioner is liable for surtax on undistributed profits in the amount of $14,038.97, which is computed by applying the provisions of section 14(b) of the Revenue Act of 1936 to undistributed adjusted net income in the amount of $68,482.78. Petitioner agrees on the amounts of its taxable net income and its adjusted net income.

Petitioner contends, first, that it is not a corporation which comes within the terms of section 14 (b), because under the provisions of the Interstate Commerce Act, as amended by the Transportation Act of 1920, it was prohibited from paying any dividends in the taxable year

because it had a capital deficit.[3]   During the taxable year petitioner's deficit amounted to in excess of $400,000.   Petitioner argues, in effect, that before it could pay dividends out of current earnings it was required to accumulate earnings until the capital deficit was extinguished.   Petitioner has not cited us to any other provisions of the Interstate Commerce Act which prescribe what funds are "properly includable in the capital account."   Assuming, *arguendo* and without deciding the point, that provisions of the Interstate Commerce Act prevented the petitioner from paying any dividends out of earnings in the taxable year, there is nothing in this case to take it out of the rule of *Crane Johnson Co.*, 38 B. T. A. 1355; affd., 311 U. S. 54; and *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46.   In both cases the corporations had existing deficits and they were prohibited by state statutes from paying dividends except out of surplus. Section 26 (c) (1) allows a credit if dividends can not be distributed without violating the terms of a written *contract* executed prior to May 1, 1936, which expressly deals with the payment of dividends.   "The language used in section 26 (c) (1) does not authorize a credit for *statutorily* prohibited dividends."   (Italics added.)   *Northwest Steel Rolling Mills, Inc.*, *supra*.   It provides no distinction here that the statute which, presumably, prohibited petitioner from paying dividends, was a Federal statute.   The provisions of the Interstate Commerce Act are not a "contract" within the meaning of section 26 (c) (1).   The *Crane Johnson Co.* and *Northwest Steel Rolling Mills, Inc.*, cases, *supra*, are controlling.   Furthermore, petitioner is not a corporation within the classes of corporation specifically exempted from the surtax on undistributed profits by section 14 (d).   Section 14 (b) makes the surtax applicable to "every corporation", which means, upon reading section 14 in its entirety, every corporation except those specifically exempted.

For the above reasons, it is held that petitioner is not entitled to a credit in the amount of its adjusted net income, or $68,482.78.

In the alternative, petitioner claims that it is entitled to a credit under section 26 (c) (2) of the Revenue Act of 1936,[4] in the sum of

---

[3] The Interstate Commerce Act, as amended by the Transportation Act of 1920, U. S. C. A., Title 49, sec. 20 (a) (12), pp. 292–293, provides in substance that it shall be unlawful for the director of any carrier to participate in the paying of any dividends from any funds properly includable in the capital account.

[4] SEC. 26. CREDITS OF CORPORATIONS.

*        *        *        *        *        *        *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

*        *        *        *        *        *        *

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

$14,000, which amount was irrevocably set aside in the taxable year out of earnings and profits in discharge of a debt. Petitioner contends that the above amount was set aside pursuant to the terms of a written contract executed prior to May 1, 1936, which terms expressly dealt with the disposition of earnings and profits of the taxable year, so that the amount in question squarely comes within the provisions of section 26 (c) (2). The respondent agrees that petitioner irrevocably set aside in 1937 $14,000 of its earnings and profits of the taxable year for the discharge of a debt by paying that amount to the Farmers & Merchants National Bank of Abilene.

The question is whether or not the $14,000 was paid in accordance with the requirements of a written contract executed prior to May 1, 1936. The deed of trust executed July 1, 1912, was continued in effect in all of its terms on February 7, 1935. Under the facts it must be concluded that the deed of trust in all its terms was in effect in 1937. When the holders of eight bonds held back their consent to the appointment of a successor trustee, for which paragraph seventeenth of the trust deed provided, until it was agreed that petitioner would redeem their bonds, there was no modification of any of the terms of the trust deed, or of paragraph thirteenth, relating to the payment of 5 percent of the gross earnings of each year into a sinking fund. The arrangement made with them, to which Jones consented, did not constitute the making of a new agreement in 1937. Jones' consent simply constituted a waiver of his right, under the default, to have all of the moneys in the sinking fund applied *pro rata* for the benefit of each bondholder.

Under the terms of the sinking fund provision petitioner is required to make sinking fund payments until all of its bonds are paid. It was required to deposit $22,657.14 in the sinking fund in 1937, or 5 percent of its gross earnings. Petitioner set aside $14,000. Under the facts there can be no serious contention that the $14,000 irrevocably set aside to redeem the eight bonds was not a sinking fund payment. It is immaterial that it was less than the required 5 percent of gross earnings of the year. It is concluded that the above amount was a sinking fund payment.

Respondent argues that paragraph thirteenth of the trust deed did not require "the retirement of any specific bonds in the manner here employed"; that the retirement of the eight bonds was undertaken only to afford a change in the trustees; and that, therefore, the setting aside of the $14,000 was not in pursuance of a requirement of a written contract. This argument is without merit. First, petitioner was required by the terms of the deed of trust to set aside during each year certain amounts as a sinking fund out of the current earnings of each year, and, second, out of the sinking fund the corporate trustee could, at the option of petitioner, use money

in the sinking fund for the purchase or redemption of bonds at 105 percent of par value plus accrued interest. Furthermore, in the event of default, any sinking fund moneys held by the corporate trustee had to be applied for the use and benefit of the holders of bonds and interest coupons secured by the sinking fund. The fact that Jones waived his right, under the terms of the last part of paragraph thirteenth of the trust deed, to have all of the sinking fund moneys applied *pro rata* to all outstanding bonds, including the bonds held by him, did not invalidate, amend, or change the other requirement of paragraph thirteenth relating to the setting aside of moneys in the taxable year out of gross earnings of the taxable year for the sinking fund.

It must be concluded that the $14,000 was irrevocably set aside in 1937 out of the earnings of 1937, pursuant to the terms of a written contract expressly dealing with earnings of the taxable year, and that the written agreement was one which was executed prior to May 1, 1936. The payment comes within the provisions of section 26 (c) (2), and petitioner is entitled to a credit in the amount of $14,000. Cf. *Brockway Glass Co.*, 43 B. T. A. 267, 270, 271, where the taxpayer deposited in a sinking fund *more* than it was required to set aside out of earnings in the taxable year, as contrasted with petitioner's setting aside *less* than was required. See also *Michigan Silica Co.*, 41 B. T. A. 511; affd., 124 Fed. (2d) 397; *Strong Manufacturing Co.*, 41 B. T. A. 1273; affd., 124 Fed. (2d) 360; certiorari granted, 316 U. S. 651; *Saginaw & Manistee Lumber Co.*, 45 B. T. A. 780.

*Decision will be entered under Rule 50.*